# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Joel Marvin Munt, | Case No. 16-cv-1206 (SRN/SER) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Minnesota Dapartment of Corrections, Tom Roy, Gloria H. Andreachi, Bruce Julson, Steve Hammer, and Bruce Reiser, | |
| Defendants. | |

STEVEN E. RAU, United States Magistrate Judge

This matter comes before the undersigned on Plaintiff Joel Marvin Munt's ("Munt") First Motion for Temporary Restraining Order Pursuant to Fed. R. Civ. P. 65(b) ("Motion for TRO") [Doc. No. 3], First Motion for Expedited Preliminary Relief Pursuant to Fed. R. Civ. P. 65(a) ("Motion for Expedited Relief") [Doc. No. 5] (collectively "Motions for Injunctive Relief"), and Motion for Judgment on the Pleadings [Doc. No. 38].[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Munt's motions be denied.

## I.     BACKGROUND

Munt is an inmate at Minnesota Correctional Facility Stillwater ("MCF-STW"). *See* (Compl.) [Doc. No. 1 at 1]. On May 9, 2016, Munt filed his Complaint and his Motions for Injunctive Relief. *See generally* (Compl.); (Mot. for TRO); (Mot. for Expedited Relief). In his

---

[1] On January 20, 2017, Munt filed a Motion to Appoint Counsel [Doc. No. 49] while this Report and Recommendation was being drafted. As such, this Court will address Munt's motion in a subsequent order.

Complaint, Munt asserts a cause of action under 42 U.S.C. § 1983 grounded on the allegations that the Defendants failed to reasonably accommodate his religious beliefs in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and article 1, section 16 of the Minnesota Constitution. *See* (Compl. at 1). In particular, Munt asserts that as a member of the Christian faith, his "deeply held religious beliefs include a prohibition against indecent displays." (*Id.* at 4). Indecent displays include changing in front of others, sharing a cell, and using a toilet or shower in a public area. (*Id.*). Because the prison cells at MCF-STW allow corrections officers to view inmates in their cells, Munt hangs a privacy sheet in his cell when changing, using the toilet, or using the faucet to give himself a "bird bath." *See* (*id.* at 4–6). Furthermore, Munt refrains from using the showers as he is "totally exposed to anyone looking down" on him. *See* (*id.* at 5). Munt understands that hanging his privacy sheet is a violation of MCF-STW policy against hanging objects in his cell, and fears that he will be retaliated against for the exercise of his religious beliefs. *See* (*id.* at 5–6, 12–13) (alleging that "[f]ailure to accommodate has caused a great deal of fear of punishment and has forced this suit").

Before bringing this action—and in an attempt to allay his fears of retaliation—Munt filed various kites and a grievance with Defendants. *See* (*id.* at 7–11). On numerous occasions, Munt asserted his religious belief against indecent displays. (*Id.*). In response, Defendants proposed alternatives that would prevent indecent displays and comport with safety and security considerations at MCF-STW. *See, e.g.*, (*id.* at 10) (suggesting the use of towel to address modesty concerns when using the toilet). The end result of this grievance process was a statement by the Defendants that they were accommodating his religious belief, that the safety and security interests of the institution prevented them from making any additional

accommodations, and that proposed alternatives addressed his religious belief against indecent displays. (*Id.* at 11).

Munt's Motions for Injunctive Relief were both filed before the Defendants were served and seek to enjoin Defendants from disciplining him for adhering to his religious belief against indecent displays. *See* (Mot. for TRO at 3); (Mot. for Expedited Relief at 2). Munt filed the Motion for TRO as a stop-gap while the Court considered his Motion for Expedited Relief. *See* (Mot. for TRO at 1). But both motions are directed to the same allegations and seek the same relief. *Compare, e.g.*, (Mot. for TRO at 3) *with* (Mot. for Expedited Relief at 2).

On September 19, 2016, Defendants filed an answer in their official capacities. *See* (Answer of Defs. Minn. Dep't of Corr., Gloria Andreachi, Bruce Julson, Steve Hammer, Bruce Reiser, and Tom Roy, "Answer") [Doc. No. 19 at 1, n. 1].[2] In their Answer, Defendants admit certain elements of Munt's Complaint, deny certain elements of the Complaint, and state that Defendants lack specific knowledge to admit or deny particular allegations in the Complaint. *See generally* (*id.* ¶¶ 1–44). Defendants also raise a number of affirmative defenses. *See* (*id.* ¶¶ 45–54). In particular, Defendants assert that their "conduct was authorized by law, was reasonable, and was taken in good faith." (*Id.* ¶ 47).

On October 10, 2016, Defendants responded to Munt's Motions for Injunctive Relief. *See* (Defs. Minn. Dep't of Corr., Gloria Andreachi, Bruce Julson, Steve Hammer, Bruce Reiser, and Tom Roy's Mem. in Opp'n to the Mots. Filed as Docket Numbers 3 & 5, "Resp.") [Doc. No. 27]. Defendants assert that the use of a privacy sheet or any other similar device is forbidden

---

[2] Due to alleged problems with Munt effectuating service, Defendants also filed answers on October 4, 2016, and October 19, 2016, for Defendants in their individual capacities. (Answer of Defs. Gloria Andreachi, Bruce Julson, and Bruce Reiser) [Doc. No. 26 at 1, n. 1]; (Answer of Def. Hammer) [Doc. No. 31 at 1, n. 1]; *see also* (Answer at 1, n. 1). For the purposes of this Report and Recommendation, the relevant portions of the various answers are the same and the Court refers only to the answer filed on September 19, 2016.

because it obstructs the Department of Corrections's ("DOC") staff's view of inmates' cells and may impede the staff from preventing certain illicit conduct, "such as tattooing, making alcoholic drinks, engaging in sexual behaviors, or attempting escape." (*Id.* at 2–3). Defendants also argue that an injunction is not warranted because Munt's allegations fail to satisfy the test under *Dataphase Systems v. CL Systems*, 640 F.2d 109 (8th Cir. 1981). *See* (*id.* at 4–11).

On October 27, 2016, Munt replied to Defendants' Response. *See* (Pl.'s Reply to Defs.' Resp. to His Mots. Requesting a TRO & Preliminary Relief, "Reply") [Doc. No. 37]. In Reply, Munt raises a number of new issues. He asserts that he was denied access to the law library. *See* (*id.* at 1). He asserts that Defendants' multiple answers "were not authorized by law." *See* (*id.* at 2). He attacks the veracity of Defendants' factual assertions. *See* (*id.*). He asserts that Defendants' arguments were not properly pleaded as affirmative defenses, and thus should be waived. *See* (*id.* at 3). He challenges the truthfulness of the affiants. *See* (*id.* at 6–7). Munt also questions whether there can be a compelling security interest when he is not the only inmate to make use of a privacy sheet. *See, e.g.*, (*id.* at 3, 5, 7, 11, 15).

## II.  DISCUSSION

### A.  Arguments Raised in Reply

The Court will first address Munt's arguments raised in his Reply. In the context of the Court's analysis for his Motions for Injunctive Relief, the Court notes that many of the arguments Munt raised are unrelated to either of Defendants' Response or Munt's Complaint. *See, e.g.*, (Reply at 1) (complaining of access to the law library); (*id.* at 2) (taking issue with Defendants filing multiple Answers).

A preliminary injunction serves to preserve the status quo and protect a plaintiff from the harm alleged in the complaint. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).

"Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.* If new injuries arise during litigation that are not a result of the harm alleged in the complaint, the court may not issue a preliminary injunction against that conduct. *Id.* As noted above, Munt's Complaint is directed to alleged infringements of his ability to exercise his religious beliefs in violation of RLUIPA. *See, e.g.*, (Compl. at 1, 4–6, 12–14). There is nothing that establishes a relationship between Munt's allegations regarding access to the law library or Defendants filing multiple answers and Munt's Complaint. Thus, these arguments are not properly before the Court.

Similarly, where Munt raises arguments in Reply that are unrelated to Defendant's Response, this contravenes both the case law in this District and the Local Rules and consequently, these arguments are also not properly before the Court. *Cf. Alexander v. Hedback*, No. 11-cv-3590 (ADM/JSM), 2012 WL 2004103, at *5 (D. Minn. June 5, 2012) (Montgomery, J.) (holding that parties may not "raise new causes of action in their briefing of issues"); *see also* LR 7.1(c)(3)(B) ("A reply memorandum must not raise new grounds for relief or present new matters that do not relate to the opposing party's response").

If Munt wants the Court to consider the issues he has raised in Reply that are unrelated to his Complaint, the proper avenue is for Munt to file a motion with the Court to amend his Complaint, not raise them as collateral issues in his Reply. Likewise, if Munt wants the Court to consider issues that are unrelated to his Motions for Injunctive Relief, Munt should file the appropriate motion consistent with the Federal Rules of Civil Procedure and the Local Rules. For example, Munt's lack of access to the law library is essentially a request for more time. If Munt

believes that he is entitled to more time to file his submissions with the Court, he should move for an extension of time.

In sum, because many of the issues raised in Munt's replay are either not related to his Complaint or not related to Defendants' Response, the Court does not considered these arguments when makings its recommendation.

### B. Motions for Injunctive Relief

Both Motions for Injunctive Relief were filed contemporaneously on May 9, 2016, and make the same basic allegations and seek essentially the same relief. *Compare, e.g.*, (Mot. for TRO at 3) *with* (Mot. for Expedited Relief at 2). The primary difference is that Munt's Motion for TRO was to address the interval of time between when Munt filed his Motions for Injunctive Relief and the point at which the Court could address his Motion for Expedited Relief. Judge Nelson concluded that this Court properly converted Munt's Motion for TRO to a motion for preliminary injunction. *See, e.g.,* (Order Dated Oct. 20, 2016, "Oct. Order") [Doc. No. 35 at 5–6] (finding that "the magistrate judge was **procedurally barred** from hearing the motion on an ex parte basis."). Thus, the Court addresses Munt's arguments collectively in this Report and Recommendation.

#### 1. Legal Standard

When considering whether a preliminary injunction should issue, a court must evaluate several factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Dataphase*, 640 F.2d at 113. "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a

preliminary injunction." *W. Pub. Co. v. Mead Data Cent.*, *Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). "The burden on the movant is a heavy one where, as here, granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits." *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993) (alteration in original) (internal quotation marks omitted).

### 2. Analysis[3]

As a threshold matter, Munt asserts that Defendants arguments made in opposition to his Motions for Injunctive Relief should be waived because Defendants failed to raise these arguments as affirmative defenses in their Answer. *See, e.g.*, (Reply at 3). Munt's argument is unpersuasive.

"An affirmative defense will defeat the plaintiff's claim if it is accepted by the district court or the jury." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1270 (3d ed. 2004). Although "[i]f the defense involved is one that merely negates an element of the plaintiff's prima facie case . . . it is not truly an affirmative defense and need not be pleaded despite Rule 8(c)." *Masuen v. E.L. Lien & Sons, Inc.*, 714 F.2d 55, 57 (8th Cir. 1983) (internal quotation marks omitted); *see also* Wright & Miller, *supra*, § 1270.

---

[3] As mentioned above, because this Court did not rule *ex parte* on Munt's Motion for TRO, Munt's Motion for TRO is considered a motion for preliminary injunction. *See* Fed. R. Civ. P. 65; *see also* (Oct. Order at 3–6). This does not change the nature Court's analysis of Munt's Motion for TRO. *See, e.g.*, *Benfield, Inc. v. Moline*, 351 F. Supp. 2d 911, 916 (D. Minn. 2004) (Davis, J.) (stating that "[t]he Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions and temporary restraining orders." (citing *Dataphase*, 640 F.2d at 113)).

Munt takes particular exception to Defendants' arguments directed to the "interests in 'safety and security of inmates.'" (Reply at 3). There is nothing to suggest, however, that Defendants have asserted this or any other argument in a manner that is inconsistent with Rule 8(c) of the Federal Rules of Civil Procedure, stating that affirmative defenses must be affirmatively pleaded. The distinction between an affirmative defense and a defense that negates an element of the plaintiff's prima facie case can be important in certain contexts. The distinction here, however, is immaterial because the manner in which Defendants have asserted their arguments comport with the heightened standard attributable to affirmative defenses. Stated differently, because Defendants properly raised their arguments as affirmative defenses, it does not matter whether this Court characterizes their arguments as affirmative defenses or merely as defenses that negate elements of Munt's prima facie case.

For example, Defendants raise a number of affirmative defenses in their Answer. *See* (Answer ¶¶ 45–54). Affirmative defenses need not be pleaded with the same pleading standards espoused in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), or *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1051–52 (D. Minn. 2010) (Schiltz, J.) (discussing the reasons why there is no heightened pleading standard under *Ashcroft* or *Twombly* for affirmative defenses). In other words, "while a . . . defense must be asserted in a responsive pleading, it need not be articulated with any rigorous degree of specificity, and is sufficiently raised for purposes of Rule 8 by its **bare assertion**." *Zotos v. Lindbergh School Dist.*, 121 F.3d 356, 361 (8th Cir. 1997).

Under RLUIPA,

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling

governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). As part of their defense, therefore, Defendants are entitled to assert that their actions further a compelling governmental interest and are the least restrictive means of furthering that interest. *See Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015). Safety and security in the prison setting is one of many enumerated compelling governmental interests. *See, e.g.*, *Fegans v. Norris*, 537 F.3d 897, 906 (8th Cir. 2008) (stating that "safety and security concerns are compelling governmental interests." (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005))); *see also Pell v. Procunier*, 417 U.S. 817, 823 (1974) (stating that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves"). Thus, Defendants' assertion in their opposition to Munt's Motions for Injunctive Relief that their conduct served the purpose of furthering safety and security interests falls entirely within the ambit of their affirmative defense raised in their answer that their "conduct was authorized by law, was reasonable, and was taken in good faith." *See* (Answer ¶ 47).

Even if it could be reasonably argued that Defendants had not complied with Rule 8(c), such compliance is not an absolute bar, as Munt asserts. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (stating that "when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal" (citing *First Union Nat'l Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 622 (8th Cir. 2007))); *see also Rogers v. IRS*, No. 2:13–cv–0797, 2015 WL 881514 at *5 (S.D. Ohio Mar. 2, 2015) (stating that "one exception to the waiver rule for omitted affirmative defenses is where the defendant asserts the substance of the defense in a pretrial motion, as long as the plaintiff does not suffer prejudice and has an opportunity to respond"). Given that these

are Munt's Motions for Injunctive Relief—which are both extraordinary equitable remedies and not dispositive of this case—and that he has responded to Defendants, there is nothing to suggest Defendants arguments result in an "unfair surprise."

Consequently—even if Defendants arguments are viewed as affirmative defense—the Court finds no reason why it cannot consider Defendants' arguments when making its recommendation on Munt's Motions for Injunctive Relief.

### a.     Irreparable Injury

As a general matter, "whether the movant has shown the threat of irreparable injury" is considered a threshold inquiry. *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). Nevertheless, alleged deprivations of rights need to be concrete; speculative claims do not suffice. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (finding that "[t]he speculative nature" of the plaintiff's claim could not support a finding of irreparable injury). In *Lyons*, the Supreme Court held that without a "real or immediate threat that the plaintiff will be wronged," injunctive relief was not appropriate. *Id.* at 110.

Munt has asked the Court for an injunction preventing Defendants from forcing him to shower in the shower stalls, confiscating his privacy sheet, transferring him into a double cell, or otherwise disciplining him for the exercise of his religious beliefs. *See* (Mot. for TRO at 3); (Mot. for Expedited Relief at 2). Munt's basis for an injunction is speculative because he has not established a "real or immediate threat" that he will be harmed.[4] For example, Munt readily

---

[4]     The fact that Munt has failed to establish a "real or immediate threat" also suggests that his claims are not ripe for consideration. *See, e.g.*, *Parrish v. Dayton*, 761 F.3d 873, 875–76 (8th Cir. 2014) ("The touchstone of a ripeness inquiry is whether the harm asserted has matured

admits that he "has not yet been disciplined for his violation of policy." (Mot. for TRO at 2); *see also* (Reply at 9–10) (discussing the potential for punishment as grounds to support the injunctive relief). Munt makes no allegations that he has been forced to "shower publicly," been "discipline[ed] . . . for hanging a privacy sheet," had his privacy sheet confiscated, or transferred to a double cell. Similarly, Munt fails to establish that there is a real or immediate threat of Munt being subjected to these retaliatory actions. Instead, Munt relies on unsubstantiated fears that he will be retaliated against at some future time for exercising his religious beliefs. *See, e.g.*, (Reply at 9–10). In fact, Munt's assertions further diminish the possibility of a "real or immediate threat" of harm. *See* (Mot. for Expedited Relief at 7) (stating that he has used a privacy sheet "for a considerable amount of time" without being disciplined); (Reply at 11) ("Privacy sheets are widely used already, along with the practice of the guards asking if the inmate is okay when an inmate has one up").

Consequently, Munt cannot show irreparable injury. Because irreparable injury is a threshold inquiry, this finding alone is sufficient to support the Court's recommendation that Munt's Motions for Injunctive Relief be denied. *See Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987) (stating that "[a]fter determining that there was no irreparable harm . . . the district court was not required to go further"). In the interest of thoroughness, however, the Court will also analyze Munt's Motions for Injunctive Relief under the remaining *Dataphase* factors.

---

enough to warrant judicial intervention. A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (citations omitted)). The Court could decide its denial of Munt's Motions for Injunctive Relief *sua sponte* on ripeness grounds. *See, e.g.*, *Bergstrom v. Bergstrom*, 623 F.2d 517, 519 n. 1 (8th Cir. 1980) (stating that the ripeness doctrine may be raised "sua sponte at any stage in the proceedings"). Instead, in the interest of fairness, the Court analyzes Munt's motions under the *Dataphase* factors as that approach is more congruent with the submissions of the parties and neither party briefed issues pertaining to ripeness for the Court's consideration.

### b. Balance of the Harms

The second factor is "the balance between this harm and the injury that granting the injunction will inflict on other parties." *Dataphase*, 640 F.2d at 113. As described above, Munt has not sustained irreparable injury and this suggests that the balance of harms weighs against Munt and in favor of Defendants because of the imposition placed on Defendants.

Even if Munt was able to establish greater harm than the speculative harm above, it is still unclear that the balance of harms would tilt in his favor. Munt seeks to prevent the Defendants from confiscating his privacy sheet, forcing him to shower in a "public place," or otherwise retaliating against him. The changes that Munt argues are potentially required to effectuate his sincerely held religious beliefs would impact safety and security considerations for the entire population at MCF-STW. For example, granting Munt's injunction would prevent the Defendants from requiring Munt to shower in places that Munt deemed "public" so that Munt may avoid indecent displays. Thus, modifying the shower stalls or otherwise changing how MCF-STW staff monitor the shower area so that Munt would no longer be showering in a "public place" implicates safety and security considerations for each inmate at MCF-STW. *See, e.g.*, (Aff. of Gloria Andreachi, "Andreachi Aff.") [Doc. No. 28 ¶ 8] (stating that "[t]he officer stationed at the shower post does not generally look into the stall unless the officer believes that an inmate's safety may be at risk").

Likewise, a potential moratorium on Defendants' ability to confiscate privacy sheets may have consequences regarding the Defendants' capacity to monitor inmates in their cells and enforce the Defendants' safety and security interests. *See, e.g.*, (Andreachi Aff. ¶ 4) (stating that DOC staff must be able to observe "the inside of inmates' cells to ensure that inmates are not engaging in any illicit activities, such as tattooing, making alcoholic drinks, engaging in sexual

behaviors, or attempting to escape"). Munt's injunction would also impact Defendants' discretion as to which inmates may be housed in double cells and thus undermine Defendants' ability to administer their facilities. *See, e.g.*, (Resp. at 6) (stating that "the DOC's authority to transfer inmates as needed with respect to capacity, incompatibilities, and the needs of prisoners would be severely curtailed" if Munt's injunction were granted). The Supreme Court has held that courts must not treat such impositions lightly. *See, e.g.*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349–50 (1987) (discussing Supreme Court cases that instruct the courts to weigh the intractable problems of prison administration when balancing the interests of inmates and the government); *see also Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005) (cautioning that RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety").

Consequently, the Court finds that the potential injury inflicted on Defendants should Munt's Motions for Injunctive Relief be granted weighs in favor of Defendants and against Munt.

### c. Probability of Success on the Merits

The third *Dataphase* factor requires that this Court determine the movant's probability of success on the merits. *Dataphase*, 640 F.2d at 113. This does not mean, however, that Munt must "prove a greater than fifty percent likelihood that he will prevail on the merits." *Id.* Instead, the showing varies based on the other *Dataphase* factors. *See id.* Because the previous factors weigh against granting Munt's Motions for Injunctive Relief, this Court finds that Munt is under a "heavy burden of demonstrating that he is likely to prevail on the merits." *Id.*

The Court does not believe that Munt would ultimately be successful in this lawsuit. Under RLUIPA and the Minnesota Constitution, the government cannot impose a substantial

burden on the exercise of sincerely held religious beliefs unless the government can show the restriction is in furtherance of a compelling governmental interest and the restriction is the least restrictive means of furthering that interest. *See* 42 U.S.C. § 2000cc–1(a); *Odenthal v. Minn. Conf. of Seventh-Day Adventists*, 649 N.W.2d 426, 442 (Minn. 2002) (stating that Minnesota courts consider "whether: (1) the objector's belief is sincerely held; (2) the state action burdens the exercise of religious beliefs; (3) the state's interest is overriding or compelling; and (4) the state action uses the least restrictive means").

For the purposes of Munt's Motions for Injunctive Relief, Defendants do not challenge whether Munt's religious beliefs are sincere. *See* (Resp. at 8). Success on the merits, therefore, turns on questions of whether Munt's exercise has been substantially burdened and whether the restrictions that give rise to the burden are the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000cc–1(a); *Odenthal*, 649 N.W.2d at 442. Whether Munt's particular religious beliefs have been substantially burdened or whether the Defendants restrictions are the least restrictive means for furthering their safety and security interests in light of Munt's particular religious beliefs have not been comprehensively addressed in this District or in this Circuit. The Supreme Court and the Eight Circuit, however, have provided some guidance. *See, e.g.*, *Holt*, 135 S. Ct. at 866–67 (discussing ways to address RLUIPA claims); *Cutter*, 544 U.S. at 722 (discussing the interplay between security interests and RLUIPA); *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 832 (8th Cir. 2009) (discussing the contours of what constitutes a substantial burden under RLUIPA); *Singson v. Norris*, 553 F.3d 660, 663 (8th Cir. 2009) (discussing the interplay between RLUIPA and "the effective functioning of an institution"); *Van Wyhe v. Reisch*, 581 F.3d 639, 656 (8th Cir. 2009) (additional discussion on what constitutes a substantial burden). Based on these and other related cases, the Court

concludes that Munt is unlikely to succeed on the merits because Munt has failed to establish a substantial burden on the exercise of his religious beliefs.

Munt's sincerely held religious belief is that he should refrain from indecent displays. *See, e.g.*, (Compl. at 1). In response, Defendants have offered a number of alternatives that address many of Munt's concerns about modesty. For example, Defendants suggest that Munt may cover himself with a tower when using the toilet to prevent potential indecent displays. *See, e.g.*, (Compl. at 9–10); (Resp. at 8–9). In Reply, Munt does not articulate why these alternatives would prohibit him from exercising his religious belief. That is, Munt provides no rationale as to what particular aspects of the proposed alternatives would inhibit the exercise of his religious beliefs against indecent displays.

Instead, Munt provides conclusory allegations that these accommodations would be insufficient. *See, e.g.*, (Reply at 14–15) (arguing that Defendants' suggestions "do not provide sufficient privacy" without providing an explanation as to why such accommodations would constitute indecent displays). In general, conclusory allegations not supported with evidence are insufficient to support a finding of a substantial burden on the exercise of religious beliefs. *See Gladson*, 551 F.3d at 833 (stating that "the inmate bears the burden of establishing that the correction facility has placed a substantial burden on his sincerely-held religious belief."); *see also Garnica v. Wash. Dep't of Corr.*, 965 F. Supp. 2d 1250, 1269 (W.D. Wash. 2013) (stating that "conclusory allegations are not supported with evidence nor do they establish . . . a substantial burden on the exercise of Mr. Garnica's religious beliefs"). Thus, Munt has not established that he would be substantially burdened by Defendants' application of their policy.

Because Munt has not established a substantial burden to the exercise of his religious beliefs, the Court's inquiry regarding success on the merits need not continue. *See Gladson*, 551

F.3d at 833 (stating that "[i]f the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply . . . the strict scrutiny test to the RLUIPA claim"). The lack of a substantial burden is sufficient grounds to find that Munt is unlikely to succeed on the merits of his RLUIPA claim. The same is true in the context of success on the merits for claims arising under the Minnesota Constitution. *Cf. Odenthal*, 649 N.W.2d at 442–43 (finding no burden of religious beliefs and holding that the regulation was not a violation of the Minnesota Constitution, article 1, section 16).

In further support of this Court's finding that Munt is unlikely to succeed on the merits, decisions in other districts and circuits suggest that Munt's lawsuit is unlikely to succeed. *See, e.g.*, *Muhammad v. Sapp*, 388 F. App'x 892, 897 (11th Cir. 2010) (holding that requiring inmates to shower in shower stalls outside their cells potentially in view of other inmates and corrections staff was not a violation under RLUIPA); *Booker v. Maly*, No. 9:12-CV-246, 2014 WL 1289579, at *23 (N.D.N.Y. Mar. 31, 2014) (Baxter, Mag. J., as adopted by Mordue, J.) (finding that occasionally appearing nude before another inmate—whether in the shower or in a double cell—was not a violation of RLUIPA because "there are valid penological objectives for prohibiting complete shielding of inmates at all times or for allowing the occasional viewing of male inmates in various states of undress"); *Slevin v. McDonough*, No. 4:06cv390, 2008 WL 821930 at *5 (N.D. Fla. Mar. 27, 2008) (Sherrill, Jr., Mag. J., as adopted by Hinkle, C.J.) (dismissing a similar RLUIPA claim by finding that plaintiff had not "explained how he is 'substantially burdened' in the exercise of his religion" by placing a towel on his lap while on the toilet).

In sum, Munt's failure to establish a substantial burden is fatal to his ability to show success on the merits. This, combined with other similar decisions by courts in other districts and

16

cicuits, suggests that success on the merits weighs against granting Munt's Motions for Injunctive Relief.

### d. The Public Interest

The fourth *Dataphase* factor is "the effect on the public interest." *Dataphase*, 640 F.2d at 112. In particular, "the determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to protect constitutional rights." *Phelps–Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012) (en banc). Because this Court has determined that Munt is unlikely to succeed on the merits, coupled with the other policy considerations discussed above with respect to deferring to prison officials in matters of prison administration, this Court finds that the public interest would not be served by granting Munt's Motions for Injunctive Relief. This factor, therefore, also weighs in favor of Defendants.

In sum, because all *Dataphase* factors weigh against granting Munt's Motions for Injunction Relief, the Court recommends denying his Motion for TRO and denying his Motion for Expedited Relief.

### C. Judgment on the Pleadings

#### 1. Legal Standard

When ruling on a motion for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c), the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved

and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (citing *Any & All Radio*, 207 F.3d at 462). In other words, "a plaintiff's Rule 12(c) motion will not be granted if defendant's answer 'raises issues of fact that, if proved, would defeat recovery.'" *Lake v. Aetna Life Ins. Co.*, 54 F. Supp. 3d 331, 335 (D.N.J. 2014) (citing Wright & Miller, *supra*, § 1368).

### 2. Analysis

Munt's Complaint is directed to the question of whether Defendants will accommodate his genuinely held religious beliefs. *See generally* (Compl.). In their Answer, Defendants admit certain elements of Munt's Complaint, deny certain elements of the Complaint, and state that Defendants lack specific knowledge to admit or deny particular allegations in the Complaint. *See generally* (Answer). The manner in which Defendants' responded to Munt's Complaint is permitted by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(b)(4)–(5). Furthermore, the factual allegations admitted by the Defendants do not give rise to a judgment as a matter of law. *See, e.g.*, (Answer ¶¶ 1, 3, 5–9) (admitting that Defendants are parties in this lawsuit and work in their respective capacities); (*id.* ¶ 10) (admitting Munt's religious affiliation); (*id.* ¶ 12) (admitting the existence of multiple-occupancy cells at MCF-STW); (*id.* ¶ 13) (admitting visibility of inmates within their cells). Likewise, the portions of Munt's Complaint for which Defendants provide denials clearly show a conflict of issues of material fact as to Munt's claims. *Compare, e.g.*, (Compl. ¶ 6) (alleging that showers at MCF-STW are "completely public") *with* (Answer ¶ 19) (asserting that showers at MCF-STW are private). Because the admissions do not give rise to a judgment as a matter of law and the denials present conflicting issues of material fact, Munt's Motion for Judgment on the Pleadings should be denied.

Likewise, Defendants' inclusion of multiple affirmative defenses also precludes the Court from granting Munt's Motion for Judgment on the Pleadings. *See Lasser v. Am. Gen. Life Ins. Co.*, No. 14-cv-3326 (MJD/LIB), 2015 WL 12778004 at *4 (D. Minn. Apr. 3, 2015) (Brisbois, Mag, J.) (stating that "[w]hen a defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings" (internal quotation marks omitted)), *adopted*, 2015 WL 12780472 (Apr. 20, 2015) (Davis, C.J.). Stated differently, because Defendants asserted numerous affirmative defenses—any of which, if proved, would bar Munt's recovery—the Court must recommend that Munt's Motion for Judgement on the Pleadings be denied.

In sum, viewing the facts pleaded as true and granting all inferences in favor of Defendants, the Court recommends that Munt's Motion for Judgement on the Pleadings be denied.

### III. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff Joel Marvin Munt's ("Munt") First Motion for Temporary Restraining Order Pursuant to Fed. R. Civ. P. 65(b) [Doc. No. 3] be **DENIED**;

2. Munt's Motion for Expedited Preliminary Relief Pursuant to Fed. R. Civ. P. 65(a) [Doc. No. 5] be **DENIED**; and

3. Munt's Motion for Judgment on the Pleadings [Doc. No. 38] be **DENIED**.

Dated: January 27, 2017

*s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.