## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Joel Marvin Munt,                                    Civil No. 16-1206 (SRN/SER)

            Plaintiff,

                                   **MEMORANDUM OPINION**
   v.                                              **AND ORDER**

Minnesota Department of Corrections,
Tom Roy, Gloria H. Andreachi, Bruce
Julson, Steve Hammer, and Bruce Reiser,

            Defendants.

---

Joel Marvin Munt, *pro se*, 236179, MCF–Stillwater, 970 Pickett St. N., Bayport, MN 55003

Lindsay LaVoie, Minnesota Attorney General's Office, 445 Minnesota St., Suite 900, St. Paul, MN 55101, for Defendants

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Report and Recommendation ("R & R") of Magistrate Judge Steven E. Rau dated January 27, 2017 [Doc. No. 52]. In the R & R, Magistrate Judge Rau recommended that Plaintiff Joel Marvin Munt's First Motion for Temporary Restraining Order ("Motion for TRO") [Doc. No. 3] and First Motion for Expedited Preliminary Relief ("Motion for Expedited Relief") [Doc. No. 5] (collectively, "Motions for Injunctive Relief") be denied by this Court. In the R & R, Magistrate Judge Rau

also recommended that Plaintiff's Motion for Judgment on the Pleadings [Doc. No. 38] be

denied. Finally, before the Court is Munt's Motion to Appoint Counsel [Doc. No. 49].

Plaintiff filed timely objections to the R & R, (Pl.'s Obj. [Doc. No 54]), to which

Defendants responded. (Def.'s Obj. Resp. [Doc. No. 58]).  Pursuant to federal law, the

Federal Rules of Civil Procedure, and local rules, the Court must perform a de novo review

of any portion of the magistrate judge's opinion to which objections are made. 28 U.S.C. §

636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); D. Minn. L.R. 72.2(b)(3).  Based on that de novo

review, the Court adopts the R & R as modified, denies Plaintiff's Motions for injunctive

relief, and denies without prejudice Plaintiff's Motion to Appoint Counsel.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff is an inmate currently incarcerated at the Minnesota Correctional Facility

("MCF")-Stillwater.  (R&R of July 30, 3015 at 2 [Doc. No. 74].)  Plaintiff asserts a claim

under U.S.C. § 1983, against  the Minnesota Department of Corrections ("DOC") and Tom

Roy, Gloria H. Andreachi, Bruce Julson, Steven Hammer, and Bruce Reiser (collectively,

"Defendants"), all of whom are alleged to be employees of the DOC.  (Compl. at 1-4 [Doc.

No. 1].)[1] Munt contends that Defendants violated the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA") and article 1, section 16 of the Minnesota

Constitution by failing to accommodate his religious beliefs.  (Id. at 1).  Specifically, Plaintiff

---

[1]  Because the Complaint does not contain consecutively numbered paragraphs
throughout, the Court's citations are to particular page numbers.

2

asserts that his "deeply held" Christian "religious beliefs include a prohibition against indecent displays," including "exposure that results from changing clothes in a public area, sharing a cell with someone, using the toilet in a public area, and showering in a public area." (Id. at 4).   Plaintiff complains of inadequate privacy at the shower facilities at MCF-Stillwater, notwithstanding their designation as "individual occupancy showers" and therefore refrains from showering, instead resorting to "bird baths" because he is "totally exposed to anyone looking down" on him.  (Id. at 4-6).  Because he refrains from showering, Plaintiff believes that he is "denied the same level of services as other inmates."  (Id. at 6). Additionally, because MCF-Stillwater corrections officers can ordinarily view inmates in their cells, Plaintiff hangs a privacy sheet when changing his clothing, taking a "bird bath," or using the toilet.  (Id. at 4-6).  According to Plaintiff, MCF-Stillwater "inmates frequently hand [sic] things in their cells for privacy. This usually goes unpunished" and often does not elicit comments from guards.  (Id. at 6).  Plaintiff also states that the lack of privacy at MCF-Stillwater forces him "to choose between potential discipline and adhering to his religion." (Id. at 5).  He understands that hanging a privacy sheet violates MCF-Stillwater policy against hanging such objects in cells, and he fears retaliation for the exercise of his religious beliefs by doing so.  (Id. at 12-13.)

Between January and March 2016–and prior to filing this lawsuit–Plaintiff filed several kites, one grievance, and a subsequent grievance appeal with various Defendants in order to address his privacy concerns and fear of retaliation.  (See id. at 7-11).  In each of the aforementioned communications, Plaintiff stated his religious beliefs prohibit "indecent

displays." Id.

In response to his grievances, Defendants offered alternatives consistent with safety and security concerns at MCF-Stillwater (e.g., compliance with the Prison Rape Elimination Act "PREA"). (See, e.g., id. at 10) (proposing that Plaintiff use a towel to address privacy concerns when using the toilet). In the final disposition of Plaintiff's grievance, Defendant Reiser dismissed the appeal. (Id. at 11.) He indicated that Plaintiff's "religious beliefs are being accommodated," citing considerations of staff and inmate safety, noting previous suggestions to address Plaintiff's privacy concerns, and stating that "showers are considered single occupancy and have curtains or doors that cover the body's mid-section." (Id.)

## B.  Procedural Background

On the basis of the aforementioned facts, Plaintiff filed suit on May 9, 2016, alleging violations of RLUIPA and article 1, section 16 of the Minnesota Constitution due to Defendants' alleged failure to accommodate his religious beliefs. Defendants filed an answer in their official capacities on September 19, 2016. (See Answer of Defs. Minn. DOC, Gloria Andreachi, Bruce Julson, Steve Hammer, Bruce Reiser, and Tom Roy) [Doc. No. 19 at 1, n.1] ("Answer").)[2] Among their responses to the Complaint, Defendants also assert various

---

[2] As a result of difficulties with effectuating service of process, Defendants filed multiple answers in their individual and official capacities. In addition to the answer filed for Defendants in their official capacities on September 19, 2016, answers were also filed on October 4, 2016 and October 19, 2016, for Defendants in their individual capacities. (Answer of Defs. Gloria Andreachi, Bruce Julson, and Bruce Reiser [Doc. No. 26 at 1, n. 1]; Answer of Def. Hammer [Doc. No. 31 at 1, n. 1]; see also Answer at 1, n. 1). For the purposes of this Order, the pertinent portions of the aforementioned answers are the same, and the Court refers only to the answer filed on September 19, 2016 for Defendants in their official capacities.

defenses.  (See id. at ¶¶ 45-54.)  For example, Defendants contend that their "conduct was authorized by law, was reasonable, and was taken in good faith" and they also claim entitlement to qualified, official, or discretionary immunity.  (Id.  ¶¶ 46-47).

Plaintiff filed his Motions for Injunctive Relief concurrently with the Complaint on May 9, 2016. The Motions for Injunctive Relief seek to enjoin Defendants from taking any disciplinary measures against Plaintiff for observing his religious belief in the prohibition of "indecent displays."  (See Mot. for TRO at 3; Mot. for Expedited Relief at 2.)  Munt explains that the Motion for TRO was filed as a provisional measure while the Court evaluated the Motion for Expedited Relief.  (See Mot. for TRO at 1.)  However, both the Motion for TRO and the Motion for Expedited Relief rest on the same factual allegations and are indistinguishable with respect to the relief Plaintiff seeks. (Compare, e.g., Mot. for TRO at 3 with Mot. for Expedited Relief at 2.)  Both seek to enjoin Defendants from disciplining Plaintiff for hanging a privacy sheet, confiscating Plaintiff's privacy sheet, forcing Plaintiff to shower, or moving Plaintiff to a double occupancy cell.  (See Mot. for TRO at 3; Mot. for Expedited Relief at 2.)

For purposes of responding to Plaintiff's motions, Defendants do not dispute the sincerity of Plaintiff's religious beliefs. (Defs.' Opp'n Mem. at 8 [Doc. No. 27].)  However, they contend that they have not substantially burdened Plaintiff's religious practice, and that even if they did, their policies are narrowly tailored to achieve a compelling governmental interest.  (Id. at 8-9.)

In his reply memorandum, Munt raises a new issue, asserting a lack of access to a law

library and also argues that Defendants' multiple answers were not authorized under the law, that Defendants' factual assertions and affidavits are untruthful, that Defendants' arguments are not properly pleaded as affirmative defenses and are therefore waived, and that there cannot be a compelling security interest when other inmates also use privacy sheets.  (Reply at 1-3, 5-7, 11, 15 [Doc. No. 37].)

### C.     The Magistrate Judge's Findings and Recommendations

The magistrate judge first noted that many of the arguments that Munt raised in his reply were unrelated to either the Defendants' response in opposition to Munt's motions or Munt's Complaint. (R&R at 4.)   Because they were not properly before the Court, the magistrate judge declined to consider them.  (Id. at 6.)   The magistrate judge also rejected Munt's contention that Defendants' arguments raised in opposition to his motions were waived because they were not raised as affirmative defenses.  (Id. at 7-10.)  As to the Motions for Injunctive Relief, Magistrate Judge Rau applied the factors set forth in Dataphase Systems v. CL Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (commonly referred to as the "Dataphase factors").  Because he found that all four Dataphase factors weighed in favor of Defendants, he recommended the denial of the motions.  (R&R at 10-17.)  The magistrate judge also recommended the denial of Plaintiff's Motion for Judgment on the Pleadings, finding that Defendants' Answer raised issues of fact.  (Id. at 18-19.)

Munt raises numerous objections to the R&R, which the Court generally categorizes as follows: (1) disagreement with the magistrate judge's determinations that the pleading requirements of Ashcroft v. Iqbal, 556 U.S. 662 (2009),  and Bell Atlantic Corp. v. Twombly,

550 U.S. 544 (2007) ("Iqbal/Twombly"), are inapplicable to affirmative defenses and that Defendants' defenses were appropriately raised and not waived; (2) a related objection to the magistrate judge's determination regarding Plaintiff's Motion for Judgment on the Pleadings; (3) concerns regarding access to legal research; and (4) disagreement with the magistrate judge's analysis and assessment of the Dataphase factors.

Plaintiff also filed two self-styled Supplements to Plaintiff's Objections ("Supplements") that essentially provide updated factual information.  (See Pl.'s Supp. to Obj. [Doc. No. 56]; Pl.'s Second Supp. to Obj. [Doc. No. 59].)  Because it appeared from the Supplements that changes had been made to the shower facilities since the initial round of briefing, the Court directed Defendants to submit a supplemental affidavit addressing the new facts in Plaintiff's Supplements.  (Order of March 6, 2017 at 3 [Doc. No. 61].)  Defendants filed the Affidavit of John Quist [Doc. No. 63] in response to the Court's directive.  Shortly thereafter, Munt objected to the filing of the Quist Affidavit (Obj. to Quist Aff. [Doc. No. 64]) and submitted his own affidavit (Munt Aff. [Doc. No. 65].)   In light of the updated facts and the Court's directive to the Defendants to provide a supplemental affidavit, the Court has reviewed the supplemental submissions, including the Munt Affidavit and Munt's Objections to the Quist Affidavit.

## II.    DISCUSSION

### A.    Affirmative Defenses/Adequacy of Defendants' Pleadings

#### 1.    Defenses and Waiver

Plaintiff contends that the magistrate judge erred in permitting Defendants to assert

certain arguments in response to Plaintiff's motions, specifically arguments regarding Defendants' interests in the safety and security of inmates. (Pl.'s Obj. at 1-2.) Munt argues that because Defendants did not raise these specific arguments as affirmative defenses in their Answer, Defendants waived them. The Court disagrees.

RLUIPA prohibits federally-funded correctional institutions from placing a substantial burden on a prisoner's religious exercise, unless the government can demonstrate that the burden furthers a compelling governmental interest and is the least restrictive means of doing so. 42 U.S.C. § 2000cc-1(a). The Act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). A "substantial burden exists if the prison policy significantly inhibits or constrains religious conduct, meaningfully curtails an inmate's ability to express adherence to his faith, or denies an inmate reasonable opportunities to engage in fundamental religious activities." Jihad v. Fabian, 680 F. Supp. 2d 1021, 1026 (D. Minn. 2010) (citing Van Wyhe v. Reisch, 581 F.3d 639, 656 (8th Cir. 2009)). This protection "extends even to religious practices that are not 'compelled by, or central to,' a certain belief system." Van Wyhe, 581 F.3d 639, 656 (8th Cir. 2009) (citation omitted). Thus, the court does not inquire as to whether a particular religious belief or practice is central to a prisoner's religion. Id. After a prisoner shows that a prison policy substantially burdens his free exercise of religion, the burden shifts to the prison to demonstrate that its policy is the least restrictive means of furthering a compelling governmental interest. See Holt v. Hobbs, __ U.S. __, 135 S. Ct. 853, 863 (2015).

While Defendants' Answer does not expressly track the statutory language regarding the defense of compelling governmental interest/least restrictive means, one of their separate defenses is that their conduct "was authorized by law, was reasonable, and was taken in good faith." (Answer ¶ 47.) The Court agrees with the magistrate judge that this pleading is sufficient to withstand a motion for judgment on the pleadings. While Munt contends that Defendants' Answer fails to meet the specificity-pleading standards of Iqbal/Twombly, the Court need not reach the issue of whether these pleading requirements apply to the defenses asserted here.[3] Nor must the Court necessarily decide whether the compelling governmental interest/least restrictive means defense is technically an affirmative defense under Fed. R. Civ. P. 8(c). Rather, even if the Court assumes for purposes of these Objections that the compelling governmental interest/least restrictive means defense is an affirmative defense, when such a defense "is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008). Given that RLUIPA spells out this defense, Munt cannot claim unfair surprise. Moreover, the responses of MCF-Stillwater

---

[3] The Eighth Circuit does not appear to have addressed the question of whether the requirements of Iqbal/Twombly apply to the pleading of affirmative defenses. See Strauss v. Centennial Precious Metals, Inc., 291 F.R.D. 338, 342 n.5 (D. Neb. 2013) (noting lack of authority, collecting cases, and finding Iqbal/Twombly inapplicable to the affirmative defenses in question); Wells Fargo & Co. v. United States, 750 F. Supp. 2d 1049, 1051-52 (D. Minn. 2010) (Schiltz, J.) (acknowledging split of opinion, but finding that Iqbal/Twombly requirements are inapplicable to the pleading of affirmative defenses for several reasons, including the lack of any such requirement in the text of Fed. R. Civ. P. 8, and the different positions of plaintiffs, who may have years to prepare a case and therefore must assert their claims with specificity, versus defendants, who typically have only 21 days in which to respond to a complaint).

staff to Munt's administrative grievances–which Munt quotes verbatim in his Complaint–clearly identify facility security and safety as reasons for denying his requests, (see Compl. at 8, 10-11), and further indicate that staff proposed alternative suggestions for accommodating Munt's concerns.  (See id. at 10-11.)  Nor has Munt been prejudiced by the assertion of this argument in Defendants' response to his motions, to which he fully responded in his reply briefing [Doc. Nos. 37, 44].  For all of these reasons, Plaintiff's Objection on this basis is overruled.

### 2.    Plaintiff's Motion for Judgment on the Pleadings

Munt further objects to the magistrate judge's determination that the allegations in Defendants' Answer do not require judgment as a matter of law under Fed. R. Civ. P. 12(c). (Pl.'s Obj. at 11-13.)   The nature of Munt's argument on this ruling suggests that he is confusing the legal standard for judgment on the pleadings with the standard for summary judgment.  (Id. at 11-12) (referring to Defendants' failure to offer any evidence and Defendants' burden to establish a compelling governmental interest, using the least restrictive means).  The magistrate judge applied the correct legal standard for a motion brought under Rule 12(c), namely, that the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," and that judgment is appropriate when no material issue of fact remains in dispute.  (R&R at 17-18) (citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000);  Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002)).  The Court agrees with the magistrate judge that material issues of disputed

fact remain, as reflected in Defendants' Answer, which contains numerous denials of the allegations asserted in the Complaint.  (R&R at 18.)  Munt's objections to the R&R are overruled as to this basis of appeal.

### B.    Legal Access

In the course of presenting his objections to the rulings on his motions, Plaintiff also argues that he lacks access to certain legal authority and has insufficient time in which to conduct research.  (See, e.g., Pl.'s Obj. at 1.)   As noted in the R&R, Munt raised similar arguments in his Reply before the magistrate judge.  (R&R at 4-5.)   The Court agrees with the magistrate judge that such arguments are unrelated to the substance of Plaintiff's motions. Nor is there any relationship between his arguments about legal access and the allegations in his Complaint or in Defendants' Answer.   Accordingly, because these issues are not properly before this Court, this basis of objection fails.

### C.    Motions for Injunctive Relief

Munt objects to the magistrate judge's analysis and determination concerning his Motions for Injunctive Relief.  (Pl.'s Obj. at 2-11.) Magistrate Judge Rau applied the proper test for determining whether injunctive relief will issue, using the Dataphase factors.  (R&R at 6-17.)  The Dataphase factors require the court to consider: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest."  640 F.2d at 113.   The factors are then balanced to determine whether  the extraordinary remedy of injunctive relief should

issue.  Roudachevski v. All-American Care Ctrs., Inc., 648 F.3d 701,  (8th Cir. 2011).  "[T]he

burden of establishing the propriety of an injunction is on the movant."  Id.  In addition, in

the context of a prison setting, a request for injunctive relief "must always be viewed with

great caution because judicial restraint is especially called for in dealing with the complex

and intractable problems of prison administration."  Goff v. Harper, 60 F.3d 518, 520 (8th

Cir. 1995).

### 1.    Irreparable Harm

Munt objects to the magistrate judge's determination that he has failed to establish a

real or immediate threat of irreparable injury.  (Pl.'s Obj. at 2-4.)   Munt claims that he has

suffered irreparable harm in the context of his free exercise rights and (1) the DOC's policy

against the use of privacy sheets; (2) access to showers; and (3) the possibility of having to

share a cell with another inmate.  The magistrate judge found that Munt's stated irreparable

harm was speculative, noting that Munt admitted that he has not yet been disciplined for

violating policy, has not been forced to "shower publicly," has not been subject to discipline

for hanging a privacy sheet, has not had his privacy sheet confiscated,  nor has he been

transferred to a double cell.  (R&R at 12-13.)   Munt, however, argues that because the threat

of disciplinary action exists, he is harmed by:  (1)  choosing between exercising his religion

and violating prison rules by hanging a privacy sheet and therefore receiving punishment;

(2) the prospect of possibly having to share a prison cell with another inmate in the future,

in violation of his beliefs; and (3) by adhering to his religious beliefs, he is denied the

"essential benefit" of showering.  (Pl.'s Obj. at 2-3.)

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality). The Supreme Court found in Holt that requiring an inmate to adhere to his religious beliefs or face discipline for rule violations constitutes a substantial burden. 135 S. Ct. at 862. The Court therefore considers that being placed in such a predicament may constitute irreparable harm. But a movant seeking injunctive relief must still demonstrate that the threat of injury is neither remote nor speculative, see City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983), but actual, imminent, and "more than a mere possibility."[4] Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982) (citing Connecticut v. Massachusetts, 282 U.S. 660, 674 (1931)).

### a.  Privacy Sheets

Applying these precepts to the facts before the Court, only one of the bases upon which Munt seeks injunctive relief demonstrates the threat of irreparable harm–his claim regarding privacy sheets–for which the need for injunctive relief might apply. Because the prison policy prohibits inmates from blocking the full view into their cells, and Munt's religious beliefs prohibit "indecent displays," thereby causing him to use a privacy sheet, if

---

[4] The magistrate judge also observed in a footnote that the lack of a "real or immediate threat" suggested that Munt's claims were not yet ripe for consideration. (R&R at 10, n. 4.) Munt objects to this language in the R&R, arguing that having to wait for his claims to ripen deprives him of meaningful access to the courts. (Pl.'s Obj. at 4.) However, the magistrate judge made clear that he did not rule on the basis of ripeness and instead analyzed Munt's motions for injunctive relief under the Dataphase factors. (R&R at 10, n. 4) (stating, "Instead, in the interest of fairness, the Court analyzes Munt's motions under the Dataphase factors. . . ."). Accordingly, this ground of objection is moot.

he contravenes that policy by hanging a privacy sheet, Munt faces disciplinary action.[5]

Because Munt acknowledges that he continues to use privacy sheets, discipline for using the

sheets is neither speculative nor remote.  See City of Los Angeles, 461 U.S. at 111; Rogers,

676 F.2d at 1214.  Therefore, as to this particular threat of injury, the Court respectfully

disagrees with the magistrate judge's finding that Munt's stated threat of injury is not

sufficiently real or immediate.  (See R&R at 10-11.)  Munt's objections are sustained in

regard to irreparable harm regarding privacy sheets, although the Court must examine the

remaining Dataphase factors with respect to his basis for relief.

### b.    Shower Access

The Court agrees with the magistrate judge, however, that Munt has not established

irreparable harm, such that immediate injunctive relief is necessary, with respect to his

shower access claim.  Defendants aver that the shower stalls in Munt's unit are individual

shower stalls. (Andreachi Aff. ¶ 8; Quist Aff. ¶ 4.)  Munt requests either "a private shower

or . . . upgrading all showers to provide the required level of privacy."[6]  (Compl. at 11, 14.)

---

[5] The Court considers Munt's stated fear of the confiscation of his privacy sheet as part of the potential disciplinary action.

[6] In one of his administrative grievances, quoted in his Complaint, Munt provides more specificity regarding his desired accommodation, requesting "the use of a private shower (at minimum comparable to the privacy provided by CX3 and CX2 showers at [Oak Park Heights] at the time of my transfer to [Stillwater])."  (Compl. at 11.)  In his affidavit, he further states that none of the various curtains installed in his unit have met the level of privacy required by his religious beliefs, as they "have failed to address the gap below the door that leaves you exposed if you must crouch down - such as to find the soap.  The current ones do not even obscure the view of those passing the showers." (Munt Aff. ¶ 4.)

14

Munt argues that he suffers irreparable harm because he is denied the "essential benefit" of showering in order to adhere to his religious beliefs.[7]  (Pl.'s Obj. at 3.)  But the decision not to shower does not force Munt to choose between violating prison policy concerning hygiene or adhering to his religious beliefs.  See Holt, 135 S. Ct. at 863.  Munt uses his cell sink to take "bird baths," which, he acknowledges, "get [ ] you clean."  (Compl. at 5.)  Defendants also attest that inmates may "thoroughly clean [themselves] by using water from their [in-cell] sink and soap."  (Andreachi Aff. ¶ 9.)  While Munt does not consider the use of his cell sink to be ideal, any potential harm is not irreparable harm that requires immediate injunctive relief.

Nor does Munt's fear of being forced to take a shower give rise to a finding of irreparable harm.   Again, deciding not to access the prison's showers does not require Munt to choose between adhering to his religious beliefs and complying with prison hygiene rules.[8]  See Holt, 135 S. Ct. at 862.  Munt is able to comply with the hygiene rules by using his in-

---

[7]  Munt grounds his  "essential benefit" argument in Moussazadeh v. Texas Dep't of Criminal Justice, 703 F.3d 781, 784 (5th Cir. 2013).  Moussazadeh, however, arose in the context of summary judgment, with a fully developed record, not as a motion for injunctive relief, and is a non-binding decision of the Fifth Circuit, whereas this Court is bound by the precedent of the Eighth Circuit.  And substantively, in Moussazadeh, the Fifth Circuit observed that "unlike our definition [of "substantial burden"], . . . , the Eighth Circuit's definition of substantial burden makes no reference to denial of generally available benefits."  Id. at 794 (distinguishing facts before the court from those in Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008)).

[8]  Although Munt does not appear to identify the prison policy that would authorize such measures, prison rules require the maintenance of a "socially acceptable level of personal hygiene."  (See R. 030, Ex. 5 to Andreachi Aff.)  Defendants aver that forced showers are infrequent, and when they do occur, they typically arise in the segregation unit, as opposed to the general population unit in which Munt resides.  (Quist Aff.  ¶ 19.)

cell sink for his bathing and personal hygiene.  (See Compl. at 5.)

### c.    Double-Bunking

Munt also seeks injunctive relief, requesting that a single-cell restriction be placed on him.  (Compl. at 14.)  The Court agrees with the magistrate judge, however, that Plaintiff's alleged fear of double bunking is too remote and speculative to demonstrate a threat of irreparable injury warranting immediate injunctive relief.  See City of Los Angeles, 461 U.S. at 111; Rogers, 676 F.2d at 1214.   Munt appears to assert that in a two-bunk cell, he would have to undress or use the toilet in the presence of another inmate, in violation of his religious beliefs against "indecent displays."  (See Pl.'s Obj. at 7.)  While Munt alleges that prison staff are allowed to reassign prisoners "arbitrarily," (Compl. at 6), he is not presently in a double cell.  The Court agrees with the magistrate judge that there is no immediate irreparable harm warranting injunctive relief, as the possibility of a cell transfer is entirely speculative.  (R&R at 10-11.)

In sum, the Court finds that Plaintiff has shown a threat of irreparable harm with respect to privacy sheets, but not with respect to showers or double bunking.  Accordingly, the Court analyzes the remaining Dataphase factors only with respect to Munt's privacy sheet claim, since having found no irreparable harm as to showers and double bunking, the Court's inquiry is finished as to those bases.  See Gelco Corp. v. Coniston Partners, 811 F.2d 414, 420 (8th Cir. 1987).

### 2.    Likelihood of Success on the Merits

Munt objects to the magistrate judge's finding that he is unlikely to succeed in this

lawsuit. (Pl.'s Obj. at 7-10.) He contends that Magistrate Judge Rau incorrectly determined that Defendants' policy against privacy sheets does not impose a substantial burden on the free exercise of his religion. (Id. at 7.) Rather, Munt asserts that the choice between violating his religion and facing disciplinary action constitutes a substantial burden. (Id.)

In ruling on this factor, a court does not decide whether the movant for injunctive relief will ultimately prevail. O'Connor v. Peru State College, 728 F.2d 1001, 1002 (8th Cir. 1984) ("The proceedings are at an early stage and to prejudge the evidence before it is fully collated and demonstrated is basically unfair. Under these circumstances, the court should avoid deciding with any degree of certainty who will succeed or not succeed."). A movant seeking injunctive relief need not show a "greater than fifty percent likelihood" of prevailing on the merits. Dataphase, 640 F.2d at 113. But if the other factors tip in the movant's favor, a preliminary injunction may be granted if the movant raises serious and difficult questions that require further investigation. Id.

As noted, under RLUIPA and the Minnesota Constitution, the government cannot impose a substantial burden on the free exercise of Munt's religion, unless the government can show that the policy in question furthers a compelling governmental interest and the restriction is the least restrictive means to do so. See Gladson v. Iowa Dep't of Corrs., 551 F.3d 825, 833 (8th Cir. 2009); Odenthal v. Minn. Conf. of Seventh-Day Adventists, 649 N.W.2d 426, 442 (Minn. 2002) (noting that Minnesota courts consider whether: "(1) the objector's belief is sincerely held; (2) the state action burdens the exercise of religious beliefs; (3) the state's interest is overriding or compelling; and (4) the state action uses the

least restrictive means."). RLUIPA does not require inquiry into whether the particular belief is a central tenet of the prisoner's religion. Cutter v. Wilkinson, 544 U.S. 709, 725 (2005). Nor does it require that the belief in question be shared by all of the members of the religious group. Holt, 135 S. Ct. at 859. The magistrate judge correctly noted that because Defendants do not challenge whether Plaintiff's religious beliefs are sincerely held, the Court's focus is on whether Munt's exercise of his religion has been substantially burdened, and if so, whether the restrictions giving rise to the burden are the least restrictive means of furthering a compelling governmental interest. (R&R at 14.)

However, the Supreme Court has cautioned that in applying RLUIPA's standard, "courts should not blind themselves to the fact that the analysis is conducted in the prison setting." Holt, 135 S. Ct. at 866. Moreover, if the prison believes that the inmate is using religious belief as subterfuge for illicit conduct, prison officials may properly question whether the asserted religious reasons for accommodation are genuine. Id. at 866-67 (citing Cutter, 544 U.S. at 725, n.13.). Finally, even when a religious accommodation is granted, prisons may withdraw the accommodation if it appears that the inmate is abusing the accommodation "in a manner that undermines the prison's competing interests." Id. at 867.

As noted, Munt seeks an exception to MCF-Stillwater's policy against privacy sheets. (See Compl. at 11.) As with the magistrate judge's finding of no irreparable harm on this ground for relief, the Court likewise respectfully disagrees with the magistrate judge's finding that Munt is unlikely to establish a substantial burden on the exercise of his religion based on his alleged fear of violating the prison policy against privacy sheets. (R&R at 15.)

In Holt, the U.S. Supreme Court found that a prisoner, put to the choice of adhering to a prison's grooming policy generally prohibiting beards or violating his religious beliefs, had established the imposition of a substantial burden, as he would face serious disciplinary action were he to adhere to his religious beliefs by growing a beard. 135 S. Ct. at 862. Here, while this litigation is at a preliminary stage, Munt similarly appears able to show that the prison's policy of prohibiting privacy sheets forces him to choose between following the prison rules or violating his religious beliefs regarding "indecent displays."

Because Munt appears likely to succeed in meeting his burden with respect to this basis for his claims, the Court examines whether Defendants are likely to meet their burden of showing that their refusal to grant Munt a privacy-sheet exception to their policy is the least restrictive means of furthering a compelling governmental interest. See id. at 863. Holt requires the Court to conduct a "more focused" inquiry, examining the asserted harm of granting an exception to Munt specifically and to "'look to the marginal interest in enforcing' the [proscription against privacy sheets]" in this particular context. Id. (quoting Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2779 (2014)).

Defendants assert that prison safety and security are the compelling governmental interests at issue here–interests of such importance that the DOC incorporates them into their mission statement. (Andreachi Aff. ¶¶ 4-6; Ex. 6.) Prison safety and security are compelling governmental interests, as the Eighth Circuit has found. See Singson v. Norris, 553 F.3d 660, 662 (8th Cir. 2009) (citation omitted). But while courts cannot blindly accept a prison's stated security justification, Holt, 135 S. Ct. at 864, the least restrictive means

standard does not require prisons to refute every conceivable option.  Id. at 868 (Sotomayor, J. concurring).   Rather, the prison must demonstrate why the less restrictive policies identified by the inmate in the course of the litigation are "insufficient to achieve its compelling interests."  Id.

Here, Munt requests an exception to the prison's policy against the hanging of privacy sheets in his cell.  (Compl. at 14.)  As to Munt, Defendants appear to assert that only by refusing to grant Munt an exception to the prohibition against privacy sheet policy can they satisfy the compelling interest of ensuring Munt's safety and security.  They attest that Munt has resided in a single-occupancy cell at MCF-Stillwater since September 23, 2015. (Andreachi Aff. ¶ 2 [Doc. No. 28].)  "Munt's cell, like all cells that house inmates in the general population at MCF-[Stillwater], is visible from the front of the cell."  (Id. ¶ 3.) Munt's cell contains a sink and a toilet, the view of which is partially obstructed by a desk. (Id.)  Defendants state that DOC staff must be able to see into cells at all times to ensure the inmate's safety and to ensure that the inmate is not engaging in illicit activities such as attempting to escape, engaging in sexual behaviors, tattooing, or making alcoholic drinks. (Id. ¶ 4.)  In light of these safety concerns, it is a violation of DOC rules to obstruct the view of staff into an inmate's cell by covering cell bars or otherwise obstructing the view into the cell.  (Id. ¶ 5; Ex. 3; Ex. 5 at 7-8.)

Munt argues, however, that Defendants have brought forth no specific evidence to suggest that he personally engages in any of the illicit activities to which Defendants refer. (Pl.'s Obj. at 6.)  But the Court observes that in Holt, there was no requirement that the

defendants, citing concerns about security, were required to show that Holt's past disciplinary measures, if any, justified their concerns.  In Holt, the prison policy in question prohibited inmates from growing beards, although it allowed an exception for 1/4-inch beards for inmates with diagnosed skin conditions.  135 S. Ct. at 856.  Because Holt, a devout Muslin, wanted a full beard for religious reasons, he proposed a compromise, requesting permission to grow a 1/2-inch beard.  Id.  Citing prison security–specifically, that the prison's grooming policy furthered its compelling interests in reducing the flow of contraband, as items could be hidden in beards, and preventing prisoners from disguising their identities–the prison refused to accommodate Holt's request.  Id. at 857.  Holt filed suit under RLUIPA. Id. at 861.  Following the grant of a preliminary injunction, followed by remand to the magistrate judge for an evidentiary hearing, the district court vacated the preliminary injunction and dismissed the inmate's claim for failure to state a claim on which relief could be granted.  Id.  The Eighth Circuit affirmed.  Id.

While the Supreme Court agreed that the prison had a compelling interest in halting the flow of contraband, it found that "the argument that this interest would be seriously compromised by allowing an inmate to grow a 1/2-inch beard is hard to take seriously." Id. at 863.  It found that the prison failed to demonstrate why it could not meet its security concerns by either searching Holt's beard or having Holt run a comb through it.  Id. at 864. In contrast here, the argument that the DOC's interest in ensuring that their staff are afforded an unobstructed view into inmates' cells, including Munt's, is quite easy to take seriously. The reason for providing sight lines into all prisoners' cells, including Munt's, is integral to

21

the prison's safety mission.  While Munt discounts any likelihood that he will engage in illicit activity, regardless of such actions, Munt's overall safety remains a compelling governmental interest that Defendants have identified.  (Andreachi Aff. ¶¶ 4, 6, Ex. 6.); See Johnson v. Penn. Bureau of Corr., 661 F. Supp. 425, 432 (W.D. Pa. 1987) (upholding, in the context of an inmate privacy claim with a lower scrutiny standard,  prohibition against privacy curtains in prison cells for reasons of health and safety, among other reasons).  In this particular context, Defendants' interest in enforcing the privacy sheet ban as to Munt is not marginal, see Holt, 135 S. Ct. at 863, as the ability of DOC staff to see into his cell ensures his safety.[9]

The Supreme Court also considered evidence concerning an exception to the grooming policy in Holt, namely, that inmates with certain medical conditions were permitted to grow 1/4-inch beards.  135 S. Ct. at 865-66.  The Court observed that, under the defendants' articulated compelling interest, both a 1/4-inch beard for medical reasons and the 1/2-inch beard requested by Holt posed the same security risk, as the defendant failed to demonstrate any meaningful difference between the two.  Id. at 866.  Moreover, the same contraband risk was present with respect to hair on inmates' heads, which was permitted to be longer than 1/2-inch long.  Id.  Here, there is no evidence of any such exceptions.  While Munt contends that Defendants do not typically enforce the policy against privacy sheets,

---

[9]  And while Munt asserts that "[t]he suggestion that a sheet could facilitate escape is absurd," (Pl.'s Obj. at 6),  Defendants' concern appears to be that the use of the sheet to obstruct the view of DOC staff could facilitate escape, not that the sheet could be used as a means of escape.

(see Compl. at 9), the Court finds that the most relevant inquiry is whether other exceptions exist, as the relief sought by Munt is in the form of an exception.

Moreover, even under the current policy that prohibits the hanging of privacy sheets, the location of Munt's cell toilet affords some privacy.  (Andreachi Aff. ¶ 3.)  In addition, DOC policy provides that inmates must be allowed to change clothes, use the toilet, or shower without a DOC staff of the opposite gender viewing their genitalia or buttocks.  (Id. ¶ 7, Ex. 7.)  Finally, prison staff have informed Munt that he is free to use a towel to cover his genitalia when using the toilet.   (Id.)   Again, while this case is in its early stages, Defendants are likely to establish that prohibiting Munt from hanging a privacy sheet in his cell is the least restrictive means of furthering the compelling governmental interest in his safety and security.

In sum, while assessing the likelihood of success at an early point in a case is imprecise, the Court agrees with the magistrate judge's overall conclusion that Munt is unlikely to succeed on the merits of his claims.

### 3.      Public Interest

Munt argues that the magistrate judge incorrectly found that consideration of the public interest favors Defendants.  The Court disagrees.  As the magistrate judge observed, "[T]he determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to protect constitutional rights."  Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008), overruled on other grounds by Phelps-Roper v. City of

Manchester, Mo., 697 F.3d 678 (8th Cir. 2012) (en banc).  Given the Court's finding that

Munt is unlikely to succeed on the merits, the Court finds that the public interest would not

be served by issuing the injunctions that Munt seeks.  Accordingly, this factor favors

Defendants.

### 4. Balance of Harms

Finally, Munt assigns error to Magistrate Judge Rau's determination that the balance

of harms favors Defendants.  This factor requires the Court to balance the harm to the movant

against the injury that granting the motion would inflict on other parties.  Dataphase, 640

F.2d at 113.  Here, only one of the three bases of Munt's claims supports a showing of

irreparable harm, while the likelihood of success on the merits favors Defendants, and the

public interest favors Defendants.  And as to the portion of Munt's claim based on privacy

sheets, the Court finds Munt not likely to prevail, as Defendants are likely to establish that

a compelling governmental interest in prison security and safety is furthered by their policy,

using the least restrictive means.  On balance, the Dataphase factors predominantly favor

Defendants.  While the Court has indicated its respectful disagreement with certain of the

magistrate judge's findings and modified them accordingly, it reaches the same overall

conclusion.  The Court adopts the R&R, as modified, and denies Munt's Motion for TRO and

his Motion for Expedited Relief.

### D. Motion to Appoint Counsel

Lastly, before the Court is Munt's motion requesting the appointment of counsel.

Munt argues that he would substantially benefit from the appointment of counsel, he has

asserted non-frivolous arguments in this litigation, and this litigation involves complex legal and factual issues.  (Pl.'s Mem. Supp. Mot. for Appointment of Counsel at 1 [Doc. No. 50].)  Further, he states that he is very limited by institutional constraints regarding access to paper, his ability to gather evidence, and his ability to present his case at trial.  (Id. at 2-8.)  In addition, he argues that the complexity of his RLUIPA claim, as well as difficulties that he has encountered in effecting service of process, warrant the appointment of counsel.  (Id. at 2-3, 6-7.)

Pro se litigants do not have a constitutional or statutory right to counsel in civil cases. Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998).  Rather, the appointment of counsel is a matter of the Court's discretion.  McCall v. Benson, 114 F.3d 754, 756 (8th Cir.1997); Mosby v. Mabry, 697 F.2d 213, 214 (8th Cir. 1982).  Among the factors the court should consider are the factual complexity of the case, the ability of the litigant to present his claims, the complexity of the legal issues, and whether both the litigant and the court would benefit from having the litigant represented by counsel. McCall, 114 F.3d at 756; Johnson v. Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986).  Here, the Court finds that neither the facts nor the legal issues involved in this case are so complex as to warrant appointment of counsel.  Moreover, Munt has demonstrated that he possesses the ability to articulate his claims and to argue his positions, and he is able to communicate effectively with the Court. Finally, the Court is satisfied that appointment of counsel would not substantially benefit the Court or Plaintiff at this time.  Should this case go to trial, Munt may renew his motions. Therefore, Munt's motion for appointment of counsel is denied without prejudice.

**THEREFORE, IT IS HEREBY ORDERED** that:

1.    The Report and Recommendation of Magistrate Judge Steven E. Rau dated January 27, 2017 [Doc. No. 52] is **ADOPTED as modified**;

2.    Plaintiff's First Motion for Temporary Restraining Order [Doc. No. 3] is **DENIED**;

3.    Plaintiff's First Motion for Expedited Preliminary Relief [Doc. No. 5] is **DENIED**;

4.    Plaintiff's Motion for Judgment on the Pleadings [Doc. No. 38] is **DENIED**;

5.    Plaintiff's Objections [Doc. Nos. 54] are **OVERRULED in part** and **SUSTAINED in part**; and

6.    Plaintiff's Motion to Appoint Counsel [Doc. No. 49] is **DENIED WITHOUT PREJUDICE**.

Dated:   March 29, 2017                    s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge