UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joel Marvin Munt,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Minnesota Department of Corrections, Tom Roy, Gloria H. Andreachi, Bruce Julson, Steve Hammer, and Bruce Reiser,<br><br>　　　　Defendants. | File No. 16-cv-1206 (SRN/SER)<br><br>MEMORANDUM OPINION AND ORDER |

Joel Marvin Munt, *pro se*, 236179, MCF–Stillwater, 970 Pickett St. N., Bayport, MN 55003

Lindsay LaVoie, Office of the Minnesota Attorney General, 445 Minnesota St., Suite 900, St. Paul, MN 55101, for Defendants

SUSAN RICHARD NELSON, United States District Judge

　　This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Steven E. Rau dated December 19, 2017 [Doc. No. 115]. In the R&R, Magistrate Judge Rau recommended that the Motion for Summary Judgment [Doc. No. 69] filed by Defendants Minnesota Department of Corrections ("DOC"), Tom Roy, Gloria H. Andreachi, Bruce Julson, Steve Hammer, and Bruce Reiser (collectively, "Defendants") be granted in part and denied in part, and that Plaintiff Joel Marvin Munt's ("Plaintiff") Motion for Summary Judgment [Doc. No. 76] be denied.

　　Plaintiff filed timely objections to the R&R ("Plaintiff's Objections") [Doc. No 116]), to which Defendants responded [Doc. No. 117]. Pursuant to federal law, the Federal Rules of Civil Procedure, and local rules, this Court must perform a *de novo* review of any

portion of the magistrate judge's R&R to which objections are made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); D. Minn. L.R. 72.2(b)(3). Based on that *de novo* review, this Court adopts the substance of the R&R in its entirety; however, the Court modifies the ruling of the magistrate judge and grants Defendants' Motion for Summary Judgment. The Court also denies Plaintiff's Motion for Summary Judgment.

## I.   BACKGROUND

### A. Relevant Facts

The R&R thoroughly and accurately describes the relevant facts and lengthy procedural background of this case, and the Court incorporates it herein by reference. Briefly stated, Plaintiff is an inmate currently incarcerated at the Minnesota Correctional Facility ("MCF")-Stillwater. (Aff. of John Quist ("Quist Aff.") [Doc. No. 63] ¶ 2.) Plaintiff is serving a life sentence with no possibility of parole. (Second Aff. of Gloria Andreachi ("Second Andreachi Aff.") [Doc. No. 72] ¶ 2.) MCF-Stillwater houses offenders who are deemed the highest risk, or classified as "levels" 4 and 5. (Quist Aff. ¶ 3.) Plaintiff holds the highest classification level of 5. (*Id.*)

Plaintiff states that his Christian religion "prohibits a wide range of displays it classifies as indecent." (Aff. of Joel Munt Supp. Pl.'s Mot. Summ. J. ("Munt Aff.") [Doc. No. 78] ¶ 1.) According to Plaintiff, this prohibition extends to the exposure that results from "changing clothes, using the toilet, showering, [and] taking a bird bath," presumably while others are watching. (*Id.*; *see also* Compl. [Doc. No. 1] at 6).[1] According to

---

[1] Because Plaintiff's Complaint does not contain consecutively numbered paragraphs, the Court's citations are to particular ECF page numbers.

Plaintiff, his religion also generally prohibits him from "being exposed to others." (Munt Aff. ¶ 1.)

Plaintiff contends that these "deeply held" religious beliefs against "indecent displays" are at odds with the physical layout of MCF-Stillwater and several policies instituted by DOC. (*See generally* Compl.) Plaintiff contends that the layout and design of the showers at MCF-Stillwater "do not provide sufficient privacy to satisfy [his] religious beliefs." (Munt Aff. ¶ 10.) For instance, even though all of the shower stalls now have an overhead awning and are considered to be single occupancy, Plaintiff contends that the interior of some of the stalls are still visible from the higher tiers and from the stairs, permitting individuals to look down and observe the inmates showering in the stalls. (*Id.* ¶¶ 20–21, 23.) Additionally, Plaintiff asserts that the shower's curtain and door "permit showering inmates to be viewed indecently." (*Id.* ¶ 21.)

Because of Plaintiff's belief that the showers provide insufficient privacy, he refrains from showering and instead resorts to taking a "bird bath." (*Id.* ¶¶ 7, 9, 10.) And because Plaintiff refrains from showering, he believes that he is being denied a benefit provided to all other inmates. (*Id.* ¶¶ 7, 9.) Relatedly, Plaintiff takes issue with a policy that he contends empowers DOC staff to "*force* inmates to shower." (*Id.* ¶ 13.) Plaintiff states that if he were forced to shower in the existing MCF-Stillwater showers, the resultant "indecent display" would be "in violation of [his] beliefs." (*Id.*) Thus, Plaintiff believes that all the showers at MCF-Stillwater must be modified to provide him with sufficient privacy, or that his cell must be rebuilt to include a personal shower. (Compl. at 16)

3

The other policies that allegedly clash with Plaintiff's religious beliefs involve DOC's prohibition against the use "privacy sheets" and DOC's ability to house inmates in double-occupancy cells ("double-bunking"). (*See generally* Munt Aff.) Plaintiff contends that he hangs a "privacy sheet" in his cell, in violation of DOC policy, when he uses the toilet, changes clothes, and takes a bird bath in order to prevent the indecent exposure prohibited by his religious beliefs. (*Id.* ¶¶ 2, 22.) Plaintiff avers that "[w]ithout a privacy sheet [he] believe[s] attempting any of these activities in [his] cell [would] result in indecent exposure that is prohibited by [his] religion." (*Id.* ¶ 2.) The use of a privacy sheet, however, only ameliorates the risk of indecent exposure when Plaintiff is housed in a single-occupancy cell. (*Id.* ¶¶ 2, 4.) According to Plaintiff, when he is housed in a double-occupancy cell, "even a privacy sheet is insufficient to maintain required decency" while engaging in the aforementioned activities. (*Id.* ¶ 4.) Thus, to mitigate these concerns, Plaintiff believes that he must be housed only in a single-occupancy cell, i.e. be issued a "single-cell restriction," and that he must be given an exemption to the rule prohibiting inmates from hanging privacy sheets in their cells. (Compl. at 16.)

Between January and March 2016—and prior to filing this lawsuit—Plaintiff filed several kites, one grievance, and a subsequent grievance appeal with various Defendants to raise his privacy concerns and his fear that he would be punished for failing to follow DOC policies. (*See id.* at 9–13). In each of the aforementioned communications, Plaintiff stated that his religious beliefs prohibit the "displays" described above, such as those that result from use of "public showers" and "open toilet areas." (*See id.*) With respect to the use of a privacy sheet, Plaintiff's kites requested that he either be permitted to hang one

4

up, or that he be given "a reasonable alternative." (*See, e.g.*, *id.* at 9 (Kite A to A East Unit Staff).) In his kites, Plaintiff stated that he sought an accommodation under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). (*Id.*) Plaintiff's kites, however, did not request that a "single-cell occupancy restriction" be instituted for him. (*See id.* at 9–10; *see also* Second Andreachi Aff. ¶¶ 5–6.) It was not until he filed a grievance on February 22, 2016 that Plaintiff mentioned that he expected to be granted a single-cell restriction. (Compl. at 11.)

In response to Plaintiff's kites and grievance, Defendants offered alternatives consistent with safety and security concerns at MCF-Stillwater (*e.g.*, compliance with the Prison Rape Elimination Act). (*See id.* at 9; *see also id.* at 12 (proposing that Plaintiff place a towel over his lap or move the cell chair in front of him when using the toilet).) In the final disposition of Plaintiff's grievance, Defendant Reiser dismissed the appeal. (*Id.* at 12–13.) He indicated that Plaintiff's "religious beliefs are being accommodated," citing considerations of staff and inmate safety, noting previous suggestions to address Plaintiff's privacy concerns, and stating that "showers are considered single occupancy and have curtains or doors that cover the body's mid-section." (*Id.* at 13.)

On the basis of the aforementioned facts, Plaintiff initiated this suit.

**B. Procedural History**

On May 5, 2016, Plaintiff filed a Complaint asserting claims against Defendants under RLUIPA and Article 1, § 16 of the Minnesota Constitution. (*Id.* at 1.) Plaintiff argues that Defendants are in violation of RLUIPA and the Minnesota Constitution

5

because they have failed to accommodate his religious beliefs.[2] (*Id.*) Except for Defendant Roy, Plaintiff asserts claims against the individual Defendants in both their individual and official capacities. (*Id.* at 4–6.)

Specifically, Plaintiff's Complaint contends that MCF-Stillwater's "public" showers fail to accommodate his religious beliefs, forcing him to take bird baths and consequently denying him "the same level of services as other inmates." (*Id.* at 14.) Plaintiff contends that DOC has put him in the position of having to choose between following policy or violating his religious beliefs. (*Id.*) Plaintiff also highlights the policy that he contends could allow guards to force him to take a shower, which he states would result in "a violent, humiliating occurrence that would also force violation of Plaintiff's religious beliefs." (*Id.* at 8.) Plaintiff's Complaint also alleges that MCF-Stillwater's policy "prohibiting inmates from hanging objects in their cells fails to reasonably accommodate Plaintiff's religious beliefs," (*id.* at 14), again forcing him to "choose between potential discipline and adhering to his religion," (*id.* at 7). Finally, Plaintiff also alleges that the double-occupancy cells at MCF-Stillwater fail to reasonably accommodate him. (*Id.* at 14.)

Plaintiff's Complaint seeks declaratory and injunctive relief as follows. First, Plaintiff asks this Court to declare as violative of Plaintiff's religious beliefs: (1) DOC's

---

[2] As this Court has previously explained, there is no private right of action for a violation of Article I, § 16 of the Minnesota Constitution. *See Jihad v. Fabian*, No. 09-cv-1604 (SRN/LIB), 2011 WL 1641767, at *3 (D. Minn. May 2, 2011). Accordingly, although the magistrate judge recommended that this Court decline to exercise supplemental jurisdiction over the claims Plaintiff brought under the Minnesota Constitution, those claims must be dismissed, as they are not legally cognizable. This Court thus dismisses those claims, and this Order only considers Plaintiff's claims under RLUIPA.

6

policy prohibiting Plaintiff from hanging objects in his cell; (2) the "public showers" at MCF-Stillwater; and (3) double-bunking generally. (*Id.* at 15.) Plaintiff also asks this Court to order DOC and MCF-Stillwater to: (1) exempt Plaintiff from the prohibition against hanging items inside cells, thus allowing him to hang up a privacy sheet; (2) "provide Plaintiff with a shower that provides him with privacy, either by providing him with a private shower or by upgrading all showers to provide the required level of privacy;" and (3) "accommodate Plaintiff's religious beliefs by placing a single-cell restriction on him." (*Id.* at 16.) Plaintiff also seeks reimbursement of costs. (*Id.* at 16–17.)

In an Order dated March 29, 2017, this Court denied several motions filed by Plaintiff, including two for preliminary injunctive relief and one for judgment on the pleadings. (*See* Mem. Op. & Order [Doc. No. 67].) On April 28, 2017, Defendants filed their Motion for Summary Judgment, and on May 1, 2017, Plaintiff also filed his Motion for Summary Judgment. In an R&R dated December 19, 2017, the magistrate judge recommended that Defendants' Motion for Summary Judgment be granted in part and denied in part and that Plaintiff's Motion for Summary Judgment be denied. (R&R at 14.)

Plaintiff timely objected to the R&R. (*See* Pl.'s Objs.)  Plaintiff does not appear to object to the magistrate judge's recommendation regarding his claims against Defendants in their individual capacities or his claims for damages against Defendants in their official capacities.  Plaintiff does, however, object to the magistrate judge's recommendation regarding his claims for injunctive and declaratory relief against Defendants in their official capacities. (*See id.* ¶¶ 2–12.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Morris v. BNSF Ry. Co.*, 817 F.3d 1104, 1107 (8th Cir. 2016). A fact is "material" only if it may affect the outcome of the lawsuit. *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). Likewise, an issue of material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed, *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), and the Court must view the evidence and any reasonable inference in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In responding to a motion for summary judgment, the opposing party "'may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson*, 477 U.S. at 256–57). "[T]he nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 910 (8th Cir. 2010) (quoting *Matsushita*, 475 U.S. at 586). "[O]nly evidence that would be admissible at trial

may be relied upon to counter a motion for summary judgment." *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 611 n.4 (8th Cir. 2007).

### B. Legal Framework

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized individual unless the government demonstrates that the burden "is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *Holt v. Hobbs*, 135 S. Ct. 853, 856 (2015). A "substantial burden exists if the prison policy significantly inhibits or constrains religious conduct, meaningfully curtails an inmate's ability to express adherence to his faith, or denies an inmate reasonable opportunities to engage in fundamental religious activities." *Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1026 (D. Minn. 2010) (citing *Van Wyhe v. Reisch*, 581 F.3d 639, 656 (8th Cir. 2009)). This protection "extends even to religious practices that are not 'compelled by, or central to,' a certain belief system." *Van Wyhe*, 581 F.3d at 656 (citation omitted). Thus, RLUIPA does not require inquiry into whether the particular belief is a central tenet of the prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 (2005). Nor does it require that the belief in question be shared by all of the members of the religious group. *Holt*, 135 S. Ct. at 859.

Claims under RLUIPA proceed under a burden-shifting framework. First, the institutionalized individual bears the initial burden of proving that the "relevant exercise of religion is grounded in a sincerely held religious belief," and that the government's action, *e.g.* a particular policy, substantially burdened his exercise of religion. *Id.* at 862. Once that individual meets this burden, the burden shifts to the government to show that its conduct

"(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of furthering that compelling governmental interest." *Id.* at 863 (alterations in original) (quoting 42 U.S.C. § 2000cc-1(a)).

### C. Analysis

At the outset, the Court notes that the parties do not dispute whether Plaintiff has a sincerely held religious belief that is being substantially burdened by Defendants. (*See* R&R at 18.) In the R&R, the magistrate judge assumed, without deciding, that Plaintiff asserted a "sincerely held religious belief that is substantially burdened." (*Id.*) Accordingly, the magistrate judge correctly focused on whether Defendants have shown that the restrictions giving rise to the burden are the least restrictive means of furthering a compelling governmental interest. (*Id.*)

As explained below, having conducted a *de novo* review, this Court agrees with the magistrate judge's analysis and recommendation as to each "restriction" and overrules Plaintiff's Objections in their entirety.

#### 1. Privacy Sheets

The magistrate judge concluded that Defendants have met their burden of establishing that the MCF-Stillwater prohibition against hanging privacy sheets is the least restrictive means of furthering a compelling governmental interest. (R&R at 18–23.) Specifically, the magistrate judge concluded that Defendants' asserted interest in maintaining safety and security is most certainly compelling, and that the ban against the use of privacy sheets furthers that compelling interest. (*Id.* at 18.) The magistrate judge reasoned that it is simply imperative to a prison's safety and security that the staff have an

10

unobstructed view inside inmates' cells. (*Id.* at 18–20.) Moreover, the magistrate judge concluded that the ban against privacy sheets is the least restrictive means of furthering that compelling governmental interest. (*Id.* at 19–23.) The magistrate judge found that "there is simply no other way for prison officials to maintain prison security without having an unobstructed view into prisoners' cells." (*Id.* at 20.) The magistrate judge addressed each of Plaintiff's contrary arguments in painstaking detail. Notably, as in *Fowler v. Crawford*, 534 F.3d 931 (8th Cir. 2008), the magistrate judge concluded that Plaintiff's rejection of Defendants' proposed alternatives—such as using a personal towel to provide privacy—evidences that there are no viable, less restrictive means of furthering the asserted interests in prison safety and security. (*Id.* at 21–22 (citing *Fowler*, 534 F.3d at 938–41).)

Plaintiff objects to the magistrate judge's findings and conclusions. In essence, he renews before this Court the arguments he presented in his Motion for Summary Judgment and which the magistrate judge thoroughly addressed. (*See* Pl.'s Objs. ¶¶ 2–8.) Plaintiff first argues that the policy against privacy sheets does not actually further the governmental interests asserted by Defendants. (*Id.* ¶ 2.) He suggests that in order to show that the policy furthers the governmental interest, Defendants must offer affirmative evidence that "privacy sheets would aid in any of the negative behavior they claim to want to prevent." (*Id.* ¶¶ 2, 6.)

This Court disagrees. "Prison officials need not endure assaults, drug indulgence, or sexual improprieties before implementing policies designed to prevent such activities in an uneasy atmosphere. Nor do prison officials charged with managing such a volatile environment need present evidence of actual problems to justify security concerns."

11

*Fowler*, 534 F.3d at 939. But what is more, in this case Defendants *have* presented evidence of serious violence that occurred in the past when offenders' cells were partially blocked, prior to the implementation of the privacy sheet policy. (Aff. of Bruce Julson ("Julson Aff.") [Doc. No. 73] ¶ 5.)

Relatedly, Plaintiff argues that Defendants' policy against privacy sheets is underinclusive, and that such underinclusiveness undercuts Defendants' arguments that their interests in security and safety are compelling or being advanced by the policy. (*See* Pl.'s Objs. ¶¶ 4, 7–8.) This Court also rejects these arguments. "A prison's interest in order and security is always compelling." *Fowler*, 534 F.3d at 939. As for underinclusiveness, the Court is unaware of any record evidence suggesting that Defendants allow offenders to obstruct the view into their cells by other means, or that Defendants have policies that allow offenders to hide illicit behavior. *See Holt*, 135 S. Ct. at 864 (noting that a prison's policy prohibiting an inmate from growing a ½-inch beard was underinclusive because although defendants claimed that the policy was designed to prevent the flow of contraband, they nevertheless permitted inmates to grow more than ½-inch of hair on their heads). Plaintiff's bare assertions that the use of privacy sheets is already widespread is insufficient at this stage. (*See, e.g.*, Pl.'s Objs. ¶ 4.) As the magistrate judge noted, Defendants have submitted various sworn affidavits stating that the use of privacy sheets is not allowed, as well as a copy of their official policy clearly stating that privacy sheets are banned. (*See* R&R at 20.) "When a motion for summary judgment is properly made and supported, as [Defendants] did here consistent with their burden of proof, an opposing party must set forth specific *facts* showing a genuine issue

12

for trial." *Fowler*, 534 F.3d at 940 (emphasis added). Plaintiff has failed to meet this burden of production.

Plaintiff next contends that the R&R ignored case law holding that the government may not decline to accommodate an inmate's religious beliefs for fear that others may also want the same "exception" as the one given to Plaintiff. (Pl.'s Objs. ¶ 3.) Plaintiff misreads the R&R. Although the R&R stated that "if [Plaintiff] were allowed exceptions to the zero-tolerance policy against the hanging of privacy sheets on the basis of his religious beliefs—taken to its logical extreme—entire prison populations could obfuscate their activities . . . on the basis of the same . . . religious beliefs," it did so only to stress that RLUIPA does not elevate accommodation of religious beliefs over a prison's need to maintain order and safety. (*See* R&R at 19.) This Court agrees with Plaintiff, in the abstract, that prison officials must consider the *individual* plaintiff and may not advance the "classic rejoinder of bureaucrats" that "[i]f I make an exception for you, I'll have to make one for everybody, so no exceptions." *Holt*, 135 S. Ct. at 866 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 436 (2006)). However, the Court disagrees with Plaintiff that the R&R erroneously adopted that line of reasoning.

Finally, Plaintiff also contends that the magistrate judge "impermissibly tries to tell [him] a towel would satisfy decency when [his] sworn affidavit already said it does not." (Pl.'s Objs. ¶ 5.) Plaintiff claims that this "logic" contravenes the purpose of the RLUIPA, as "[a] substantial burden exists if you are forced to behave sinfully or face discipline, yet [the magistrate judge] thinks inmates still should be forced to commit the

13

sin rather than enforce the law which requires the government to accommodate religious beliefs." (*Id.*) Plaintiff again misses the mark.  Relying on binding circuit precedent, the magistrate judge merely reasoned that Plaintiff's unwillingness to consider alternatives evidenced that the outright prohibition against privacy sheets was the least restrictive means of furthering the compelling governmental interest. *Fowler*, 534 F.3d at 938 ("[T]he government has satisfied the least restrictive means prong by demonstrating that other less restrictive alternatives are not acceptable to plaintiff." (quoting *Hamilton v. Schriro*, 74 F.3d 1545, 1553 (8th Cir. 1996))).

In sum, this Court agrees with the magistrate judge that Defendants have met their burden of establishing that the prohibition against the use of privacy sheets to ensure an unobstructed view into inmates' cells is the least restrictive means of furthering the compelling governmental interests in safety and security. Accordingly, this Court agrees that summary judgment in favor of Defendants is warranted on this claim.

### 2. Shower Access

The magistrate judge concluded that Defendants have met their burden of showing that their denial of Plaintiff's request for a private shower or that all showers be remodeled is the least restrictive means of furthering the compelling governmental interest in safety and security. (R&R at 23–26.) The magistrate judge found that Plaintiff's request for a private shower was a "non-starter," as remodeling a single cell would "place a substantial burden on [MCF-Stillwater] personnel and costs." (*Id.* at 25 (quoting Quist Aff. ¶ 18).)  As for the current layout of the showers at MCF-Stillwater, the magistrate judge found that they are designed to allow prison officials to see an inmate's feet "to prevent assaults, attacks,

14

and provide assistance in medical situations," thereby unquestionably furthering the state's interest in security and safety. (*Id.* at 23 (quoting Defs.' Mem. [Doc. No. 70] at 5–6).) The magistrate judge further found that the current design was the least restrictive means of furthering the compelling governmental interest, again pointing to Plaintiff's rejection of alternatives and his "all-or-nothing approach." (*Id.* at 25–26.)

Plaintiff objects to these findings and conclusions, again renewing the arguments he raised before the magistrate judge. For instance, Plaintiff argues that the magistrate judge erred in concluding that the layout of the showers in other prisons—which Plaintiff contends are private enough to satisfy his religious needs—was a relevant but not dispositive consideration. (Pl.'s Objs. ¶¶ 9–10; *see* R&R at 24.) Similarly, Plaintiff objects to the magistrate judge's conclusion crediting Defendants' contentions that building a private shower for Plaintiff and/or "conforming" all of the showers at MCF-Stillwater would be impracticable, cost-prohibitive, and against MCF-Stillwater policy. (*See* R&R at 25; Pl.'s Objs. ¶¶ 10–11.) Throughout his Objections, Plaintiff contends that the magistrate judge improperly resolved in Defendants' favor a myriad of "disputed issue[s]" that should have been left for trial. (Pl.'s Objs. ¶¶ 9, 14.)

Having conducted a *de novo* review, this Court reaches the same conclusions as the magistrate judge. At bottom, every argument or "factual dispute" that Plaintiff raises implicates matters clearly within the professional judgment of Defendants. *See Fowler*, 534 F.3d at 943 (courts must distinguish between "disputed facts . . . and disputed matters of professional judgment"). And when "disputes" raised pertain to the professional judgment of prison administrators, "'inferences must accord deference to the views of prison

15

authorities' where those views rest on more than mere speculation and conjecture." *Id.* at 943 (quoting *Beard v. Banks*, 548 U.S. 521, 530 (2006) (plurality)). Indeed, "[j]udgments regarding prison security are peculiarly within the province and professional expertise of corrections officials, and in the absence of *substantial* evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.* at 938 (quoting *Hamilton*, 74 F.3d at 1553). Here, Plaintiff simply takes issue with the professional judgment of the prison administrators, but presents no evidence whatsoever that Defendants have exaggerated their response to safety and security considerations at a penal institution that houses inmates with violent histories. *Cf. id.* at 941 (cautioning against judges becoming "the primary arbiters of what constitutes the best solution to every religious accommodation problem" in state penal institutions).[3]

In sum, this Court agrees with the magistrate judge that summary judgment is warranted in Defendants' favor on this issue.[4]

---

[3] Plaintiff also claims that the magistrate judge again impermissibly suggested that Plaintiff must accept the prison's alternatives even if they violate his religion. (Pl.'s Objs. ¶ 12) As this Court already discussed, the magistrate judge's discussion of alternatives offered to Plaintiff—in this instance, the use of the handicap shower, which may lead to less exposure—was simply in the context of concluding that Defendants have met their burden of showing that the challenged policy is the least restrictive alternative. (*See* R&R at 25–26.)

[4] Plaintiff objects that the magistrate judge made no ruling on forced showers. (Pl.'s Objs. ¶ 29.) However, there is no evidence in the record demonstrating that Plaintiff has ever been forced to shower, or that he has exhausted his administrative remedies on this claim. Defendants have explained that "[f]orced showers do not occur on a regular basis and typically only occur in the segregation unit." (*See* Quist Aff. ¶ 19.) This claim was thus not properly presented in this litigation, and is dismissed. But in any event, even if this issue had been properly presented here, this Court would conclude that Defendants'

### 3. Single-Cell Restriction

The magistrate judge concluded that Plaintiff had failed to exhaust the administrative remedies available to him for obtaining a single-cell restriction. (R&R at 26–32). The magistrate judge found that Plaintiff had failed to follow the prison's administrative process requiring that he file a kite up the chain of command, followed by the filing of a grievance and a grievance appeal, if necessary. (*Id.* at 27.) Specifically, the magistrate judge concluded that "there is nothing in the record that demonstrates that [Plaintiff] filed a proper facility grievance or a proper appeal regarding his challenge to the double-bunking policy." (*Id.*)

Once again, Plaintiff renews the same arguments he raised before the magistrate judge and which are thoroughly addressed in the R&R. Plaintiff primarily contends that the exhaustion doctrine should not preclude his claim from going forward because he was unaware of the correct procedures. (Pl.'s Objs. ¶ 16.) Plaintiff claims to have been completely ignorant of the proper way to request the single-cell restriction, stating that "nothing in the policy indicates requests can be made nor how such a request would be made." (*Id.*)

The Court has reviewed Plaintiff's contentions *de novo*, and agrees with the magistrate judge that Plaintiff failed to exhaust his administrative remedies. As correctly found by the magistrate judge, the record is replete with evidence that inmates routinely request single-cell assignments. (*See* R&R at 30; Julson Aff. ¶ 9 ("Single cell assignments

---

policy of requiring inmates to shower in some circumstances is the least restrictive means of furthering the compelling governmental interest of inmate health and cleanliness. (*See id.* (explaining that requiring inmates to shower if they refuse to maintain a certain level of cleanliness is "done for health and cleanliness").)

are highly sought after and I frequently reviewed these requests.").) And this Court fully agrees with the magistrate judge that "if prison staff frequently received single-cell occupancy requests, it strains credulity to suggest that the process is so opaque as to render the process incapable of use by an ordinary prisoner." (R&R at 30 (citing *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).) Indeed, as stated by the Fifth Circuit in the case that Plaintiff cites in his Objections, there is an "oft-applied and well-established rule[]" that "courts may *not* deem grievance procedures unavailable merely because an inmate was ignorant of them, so long as the inmate had a fair, reasonable opportunity to apprise himself of the procedures." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015).

Relatedly, Plaintiff argues that the magistrate judge "mistakenly equates a single cell *assignment* request to a single cell *restriction* request," and that he "fails to offer any reasons why knowledge of the first (which is widely used) would be . . . relevant to showing knowledge of the second." (Pl.'s Objs. ¶ 19 (emphasis added).) Plaintiff points to a distinction without a difference, and misunderstands that the relevant consideration is whether he failed to exhaust remedies that were "available" to him. "Available" remedies are those "capable of use for the accomplishment of a purpose: immediately utilizable . . . accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (quoting Webster's Third New International Dictionary 150 (1986)). Certainly, knowledge of how to request a single-cell assignment is relevant to whether procedures for requesting a single-cell restriction are accessible or capable of being used by inmates.

In sum, this Court agrees with the magistrate judge that Plaintiff failed to exhaust his administrative remedies on the issue of a single-cell restriction, and concludes that Plaintiff's RLUIPA claim on this issue must be dismissed without prejudice.

As the Eighth Circuit has noted, "[i]n enacting § 3 of RLUIPA, Congress sought to eliminate 'frivolous or arbitrary' barriers impeding prisoners' exercise of religion." *Fowler*, 534 F.3d at 942 (citing *Cutter*, 544 U.S. at 716). Here, it is not difficult to "discern the difference between the arbitrary restrictions Congress sought to proscribe with RLUIPA," and the issues Plaintiff raises. *See id.* Like the magistrate judge, this Court finds no difficulty concluding that summary judgment is warranted in favor of Defendants on Plaintiff's RLUIPA claims related to privacy sheets and showers.[5] Accordingly, this Court adopts the substance of the R&R in its entirety and overrules Plaintiff's Objections.

## III.  ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED that:**

1. Magistrate Judge Rau's R&R of December 19, 2017 [Doc. No. 115] is **ADOPTED as modified herein**;

2. Plaintiff's Objections to the R&R [Doc. No. 116] are **OVERRULED**;

3. Plaintiff's Motion for Summary Judgment [Doc. No. 76] is **DENIED**;

4. Defendants' Motion for Summary Judgment [Doc. No. 69] is **GRANTED:**

---

[5] Plaintiff's recent filing [Doc. No. 122], to which Defendants responded [Doc. No. 123] urging this Court not to consider Plaintiff's late filing, does nothing to change this Court's analysis. Plaintiff merely points to additional case law (some of which is included in this Order), and presents additional factual allegations that, even if considered, would not change this Court's ultimate conclusion.

a. Defendants' Motion for Summary Judgment on Plaintiff's RLUIPA claims for injunctive and declaratory relief related to privacy sheets and access to showers is **GRANTED**;

b. Plaintiff's RLUIPA claims for injunctive and declaratory relief related to a single-cell restriction are **DISMISSED without prejudice for failure to exhaust administrative remedies**;

c. Plaintiff's RLUIPA claims for monetary damages against Defendants in their official capacities are **DISMISSED without prejudice for lack of subject matter jurisdiction**;

d. Plaintiff's RLUIPA claims against Defendants in their individual capacities are **DISMISSED with prejudice for failure to state a claim**; and

e. All other claims against Defendants are **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 26, 2018  s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge